Good morning. May it please the court, my clients are eight Milwaukee police officers and two Milwaukee police sergeants. Their claim before you today is that they maintain that they are entitled to the defense of qualified immunity and therefore the protection from the risks associated with going to trial before a jury. This is not a case of excessive force. This is not a case of wrongful arrest. This is a case involving the allegation that these officers and sergeants failed to provide necessary medical care and specifically access to necessary medical care to a pretrial detainee who was in their custody. Mr. Williams was that person. Mr. Williams was taken into custody and he was still at the scene of his arrest and he was at the scene within 15 minutes of being taken into custody when he collapsed and died. According to the medical examiner, he died from a sudden onset sickle cell crisis. In any event, the officers... Isn't that contested? As far as... The cause of death, isn't that a contested fact? That is the only determination of cause of death that was determined by the medical examiner, but the cause of death is not related to or significant to... There was another opinion that it was inconclusive, isn't that correct? Correct. It was only inconclusive because of the fact that in analyzing the cause of death, the medical examiner and the blood samples indicated sickling. Our medical examiner, and he thoroughly presented this in his report, had looked at all other possible causes of death like heart attack, stroke, asthma attack, et cetera, et cetera. Could find nothing else and at the end of his analysis, because there were sickle thrombi in the many organs of Mr. Williams and throughout his blood system, that that by process of elimination was the only cause of death that he could determine, was focused on that blood sample. And their conclusion that it was undetermined was based upon the fact that oftentimes the sickling can occur post-mortem. So because they did not have a pre-death sample of blood and only had a post-death sample of blood, they determined that they could not say with absolute 100% surety or certainty that the cause of death was in fact sickle cell or sudden onset sickle cell crisis. However, they offered no other possible cause of death and did not conclude that it was something like a heart attack, an asthma attack, a stroke, something of that nature. In this particular case, the officers assert that there was no clearly established case law which put them on notice that in their circumstance that they faced on that date, and by that I mean each of the 10 individual officers and sergeants, there was no clearly established case law which indicated or established that they were required to provide access to medical care to Mr. Williams, given what they knew at the time and given their totality of circumstances. The Supreme Court has not yet ruled on the specific constitutional guidelines to be applied in analyzing this type of situation. And with regard to the circuit courts, this court and the 9th Circuit applies a 4th Amendment objectively reasonable standard. The 6th Circuit and the 8th Circuit have not determined whether they will apply a 4th Amendment or a 14th Amendment through the 8th Amendment standard. All of the other circuit courts apply an 8th Amendment deliberate and different standard. So there is a split amongst the circuits. Has that split now been resolved by the recent Supreme Court case? I don't believe it has. There was a petition, I'm not aware of that. Justice Sotomayor's case? No. On this particular issue as it relates to provision of medical care. I'm sorry, I'm not aware of that decision. I looked at it as of last month and there was a petition for review looking at, asking the court to take on this issue and make a decision between the 4th and the 8th slash 14th Amendment and that petition had been denied. I apologize, I'm not aware of a subsequent decision. But in any event, this case happened back in 2011 or the subject matter of these events and so therefore it's the case law that applied prior to that which is involved with this court's analysis as to whether or not there was a clearly established constitutional right. So aside from the fact that... You say in your brief and in your reply brief over and over again that the district court, I'm quoting from page 36 of the blue brief, district court incorrectly applied a reasonableness standard rather than an objective reasonableness standard, which is the standard in this circuit. And if you look at page 50 of the district court's opinion, after going through the facts in exquisite detail, the district judge said, and I'm quoting, an arrestee's right to objectively reasonable medical attention has been established since at least 2007. How can you say that the district court didn't apply an objective reasonable standard when it's specifically quoted in the opinion itself? The right that the court referred to was a very vague and ambiguous right. It was not specifically defined by the factual circumstances of this particular case. It's a case... Oh, he went on in the next sentence. He says no police officer could ever reasonably conclude that deliberately ignoring an arrestee's genuine and severe medical emergency would satisfy the Williams factors. And there has been no definition in the case law in this circuit or in any circuit or by the Supreme Court that the circumstances that were faced by the Milwaukee officers and sergeants in this matter put them on notice that what they were observing objectively amounted to a significant or serious medical condition. Have you have you looked at the video? I have looked at the video. I've also... Doesn't that disturb you that this man was in the backseat of the car in obvious distress and the officers were basically ignoring him or even making fun of him? Not only... They were not making fun of him. I beg to differ with that. Well, I heard one of them say you're just you're just fooling around or something like that. Well, and based on the perspective of the police officers, given what they knew regarding that sequence of events, it was not unreasonable for them to reach that conclusion. At no time that night did Mr. Williams indicate that he suffered from a medical condition. Keeping in mind, he's still at the scene of his arrest. So... He's saying he can't breathe. That's the only... He says in the car at one point, I'm dying. Isn't that enough? According to the case law, no, there is no case law that indicates that that puts police officers or law enforcement personnel or prison officials on notice of what could be or what is a serious medical condition. How do you deal with the Ortiz case and the Flora case? I mean, we didn't have particularly firm, solid previous cases in those either, but we had no problem saying that when you ignore this kind of physical situation, you got to do something. Well, I think with the Flora case, that was the case where the woman was taken into custody and was complaining of pain, indicating she thought she was having a heart attack, asking for aspirin. The officers did not initially respond to that and provide her with any kind of emergency medical care or access to it. Or give her the aspirin. Time passed. Subsequently, they did call an ambulance. And in that case, the court determined that the officers were entitled to judgment. And then how about the Ortiz case? That came out the other way, didn't it? Correct, it did. But in that case, and I believe that was the case involving the person who had a diagnosed medical condition who had been medically screened prior to coming into their location of incarceration, the jail personnel were made aware of the fact that this person did have a condition, did rely on medical medication to treat that condition, and that person was not provided with access to the medication. So in that particular case, the jail personnel were made aware of the fact that this person did not have an immunity or summary judgment. But in our particular case, this all started with an individual who was observed by officers in the act of what they believed to be committing an armed robbery. It was an evening, dark evening. A couple were on a street corner. The officers were actually following another vehicle that was driving dangerously. They observed Mr. Williams approach this couple wearing a joker, a neoprene mask with a joker smile on it, covering his face. He had his hand under a shirt with an object. It appeared that he had a gun concealed under his shirt, and the officers believed that they were observing an armed robbery in process. They stopped the squad car, and this is Officers Klein and Toms. When they stopped the squad car and got out, Mr. Williams looked at them, literally jumped out of his shoes and ran. He ran for 250 to 300 yards. That's the equivalent of two to three football fields on a warm July night. The officers found him subsequently. Many officers responded to this call because of its significance and the involvement of a potential weapon. So Officer Klein did pursue Mr. Williams. He was found ultimately in a yard, again about 250 to 300 yards away, by Officers Coe and Ticcioni. They took him into custody without incident. There was a point in time when he was being taken into custody when he made a statement that he could not breathe. At that point in time, Officer Ticcioni was employing what's called the three-point stabilization technique. So he had a knee on Mr. Williams' back, was stabilizing him for handcuffing. When he heard the statement about not being able to breathe, he took the weight off and hit that knee, and ultimately Mr. Williams was stood up. In that particular situation, it was not unreasonable for either Officer Ticcioni or Officer Coe to not call for an ambulance simply because Mr. Williams said, I can't breathe. That statement was true. One aspect of this that at least I find troublesome, there were quite a few officers here and two sergeants, am I correct? Yes. What did the sergeants know about this situation? The sergeants knew from the dispatch that they were in pursuit of a man who had apparently attempted an armed robbery with what was thought to be a gun. I'm talking about the condition of the arrestee. What did the sergeants know? Well, Sergeant Paul responded to the scene. He did not know anything. Again, Mr. Williams was still at the scene of his arrest. He hadn't been medically screened. He did not indicate he suffered from any particular medical problem. So Sergeant Paul knew that this was a man on a warm night who had just run 250, 300 yards, jumping at least one fence in the process. He was out of breath. He was sweating. Officer Klein, who had pursued him, also was out of breath, also was sweating. It was perceived that in context, this was a statement that was indicating the man was out of breath, not that he was in the process of dying. My point is the sergeant was fully apprised of the situation. Is that right? He was there in the yard and he was aware and saw Mr. Williams being taken into custody, as did other of the officers that responded. Once they saw that Mr. Williams was handcuffed and stood up by Tichione and Co., most of the other officers left, and the most primary thing that they were doing was going back along the flight path to see if they could locate this gun that he was believed to have had. So Officer Paul left the yard at about that time. Sergeant Teal was still on scene. There did come a point in time where Mr. Williams started to drag his feet, bend his knees. He kept his head up but closed his eyes. Only one sergeant was present then? At that point in time. Sergeant Teal did go to Mr. Williams to ask him what was happening, what was going on. He did not receive a response. He gave Mr. Williams a sternum rub. In response to that, Mr. Williams... The sergeant did? The sergeant did. Mr. Williams opened his eyes and said, hey, I was just playing. Those people were my friends. And then he continued to move along his way toward the squad car. Given that information, in the context of this whole situation, the sergeant just understood that this person was in fact playing games. Let me tell you what I'm driving at, because we're taking too much of your time on what is really not my point. As I read about this, it seemed to me that if I were a patrol officer there, and there were sergeants there, and the sergeants knew we were apprised entirely of the man's condition, my obligation to do or not do something is somewhat less than the sergeants. I've got to follow their orders at that point. So I'm worried about keeping the patrol officers on the hook and taking the sergeant off. So I think you have a little conflict of interest, to be very frank, in representing both. I mean, I just think that's what I'm worried about. I'm worried about whether these people are similarly situated in that situation. In the sense that all the personnel on scene had the same kind of American Heart Association and Red Cross training. What they were observing then in context, yes, there was a statement being made, but what they were observing, what had previously occurred to them, did not suggest to them... If one guy's got three stripes on his sleeve, he's obviously in charge of the situation. He actually was proactive in doing something, this sternum rub. My point is, if I'm a patrol officer standing there, it seems to me I follow the sergeant's lead. I don't do anything else. Absolutely, and the sergeant in this case... The sergeant may have a problem. Perhaps he should have done more. Perhaps his, given the sternum rub, wasn't enough. That's another question. But there is no case law out there that indicates he was required to do more. No, but I've got to deal there with the Ortiz case. See, and that's what, it may well be that what he did wasn't reasonable. But by virtue of the statement alone, there is no case law that indicates that he was unreasonable in conducting the sternum rub and concluding from Mr. Williams' response and statements that this was not an emergency medical situation which required an ambulance to come to the scene. Ms. Lappin, I have a procedural question that's been bothering me. The plaintiff here, in their brief, raises a number of cases which indicate that the finding by a district court of contested facts to preclude summary judgment is not reviewable in this court. They cite Whitlock, they cite LeVon, they cite Stinson, they cite Gutierrez, and of course they all come from the Johnson case. You don't even respond to that argument in your brief. Can you respond to that now? Well, I think I did respond in the sense that I talked about in these types of situations upon a review that if there truly is undisputed facts, then the court and the district court points those out. This court is bound to review those facts in the context of its review. However, if there are facts that are not supported by admissible evidence, that's not supported by the record, this court need not accept that type of fact. But the district court concluded that there were contested facts that preclude summary judgment, and those cases stand for the proposition that like any other decision, denying summary judgment and letting the case go forward is unreviewable. You don't even cite any of those cases in your brief. But in the court's decision, what it held to be, and it's difficult to evaluate that decision because the court does not analyze from the perspective of each of those ten officers and go over what they do or what they should have known. It focuses on the determination of whether or not Mr. Williams was in fact having a serious medical condition, what was in the officer's head. Now Judge Stattmuller wrote a 58-page decision, half of which goes through each of those facts in exquisite detail with regard to each of the officers in question. And then concludes that there's too many contested facts, the cause of death, the location of the officers, what each officer heard and what Mr. Williams said. There was conflicting testimony about that, his condition before he was put in the car, and of course what the officers observed when he was in the car when we can see for ourselves from the video what was happening. He says these are all contested facts, what they saw and what they should have done about what they saw and what they heard. So isn't that the prototypical denial of summary judgment? This was after discovery, remember, this wasn't a pre-discovery qualified immunity. And those cases say qualified immunity or not, those decisions are not reviewable. But with regard to the factual application to a standard of review whereby you're looking at the object of reasonableness of the officers, we can look at what is undisputed about what they saw and what they heard and what they knew that night in combination with their training. And there is no indication, even though there was an ultimate determination of cause of death by medical examiners, there was no indication whatsoever that any officer knew or understood that night, given what they experienced in the totality of circumstances, that Mr. Williams was experiencing a serious medical condition such that he was going to die from it. There's just no indication to that whatsoever. He was talking, he was saying, I can't breathe, but he was talking. And for some witnesses and the judge's conclusion, the district court judge's conclusion, he was yelling those words loudly. He was walking, he was conscious, he was not exhibiting anybody who was on the verge of death until he was in the squad car. And while we have that video, that video is not from the perspective of any officer. That was a camera that was in the squad car. There were two different officers that were in that squad car at different points in time. Officer Klein was the first officer with Mr. Williams. There were officers all around the squad car. There was a man sitting right in front of Mr. Williams as he was dying who could have looked in the camera and didn't, could have turned around and didn't. I'm not saying that they did anything wrong. I'm just saying that these are questions that would ordinarily be put to a jury. Isn't that right? But even given those factual assertions, it was still objectively reasonable for the officers to engage in the actions or inactions that they did. It can't be said that no other law enforcement officer in those circumstances that night, again, at the scene of an arrest without a medical screening, having a person who is saying, I can't breathe, but yet the person has just run 300 yards, jumping fences. It's a hot night. He's sweating. The officers are breathing heavy and sweating. And when the officer in the squad car, Officer Klein, is asking him, what's your name? Sir, what's your name? The response he gets, not my name is Derrick Williams, he gets the response, I can't breathe. The officer asks that four times. Well, isn't that the whole point? He can't even give his name because he can't breathe. But he was making all sorts of statements. So he was talking, therefore he was breathing. And that's consistent with American Heart Association training and the Red Cross training when they evaluate the ABCs of someone for purposes of determining if there's a serious medical condition. What is the airway and the breathing and the circulation? He was seated up. He was standing. He was walking. He was talking. He was not unconscious. He did not lose his ability to breathe. And he was making that statement. Sounds like we're trying the case. No, we're looking at what is objectively reasonable for a police officer on scene that night, knowing what these officers knew, given their training and application to this set of circumstances that was very unique, not paralleled in any case law. So these officers made their best decisions based upon what they then and there knew. And there was no case law telling them that in this type of situation, it was a constitutional violation for them not to call for an ambulance at that point in time. As soon as they recognized that Mr. Williams was unconscious or had fallen in the backseat or was slumped over in the backseat, Officer Blakewell then immediately engaged his training, did a sternum rub, checked for breathing, checked for a pulse, went to the other squad to call for help, which is what you're supposed to do, came back, called all the officers to the scene. They began CPR. They called for EMTs. So they engaged in that process. Once the situation became clear to them that he was experiencing a medical emergency. He was dead by then. He is dead right now. He was dead by then. Oh, I'm sorry. And that, I would assume, yes. He was pronounced dead by the EMT shortly thereafter. But I don't think they ever resuscitated him to the point where he was breathing again or had circulation again. And so with that, I thank you. Thank you, Ms. Lapham. Mr. Elson? May it please the Court, my name is Ben Elson. I represent the Plaintiffs Appellees. I'd like to address the jurisdictional issue first. The defendants unabashedly rely on their version of the facts in arguing for qualified immunity. And by doing so and by presenting their case to the Court in this fashion, they have deprived this Court of jurisdiction under Johnson v. Jones and its progeny. They greatly minimize Derek Williams' complaints that he can't breathe and his numerous physical signs of distress. And they fail to take any of the reasonable inferences in plaintiffs' favor. Their argument for qualified immunity is based on the assertion that each of the officers reasonably believed that Derek Williams was faking it and was playing games as opposed to actually being in medical distress. The problem with that argument from a jurisdictional perspective is that it's based on a disputed fact. The District Court specifically found that each of these officers was well aware that Derek Williams was suffering a stroke and that they failed to do anything about it until it was too late. The defendants in this procedural posture are required to accept that factual finding for purposes of this appeal in order for this Court to have jurisdiction. Their refusal, their unwillingness to accept that fact deprives this Court of jurisdiction. Well, that's their position. I'm sorry? That's the position of your opponent, right? Their position is that the officers reasonably believed that he was faking it. But that's indirect. If we take the facts favorable to the opponent of qualified immunity, then we have jurisdiction. Are you familiar with Hurt v. Wise, our Hurt v. Wise 2018 case? I am familiar with that case. Wouldn't that suggest that we would have appellate jurisdiction? I don't think so. I think the facts must be taken in the light most favorable to the plaintiff. Right. No, that's exactly right. That's right. So if we take the facts most favorable to the plaintiff in this situation, do we have appellate jurisdiction? I don't think so because I think that it depends on the way that they present their appeal. And it depends on what facts their qualified immunity argument is based on. And because they've chosen to base their argument on disputed facts, they've deprived this court of jurisdiction. I think that Gutierrez v. Kerman case is instructive on that point because in that case, that was a Fourth Amendment false arrest case. And the appellants, the officers in that case, decided to present their appeal based on six undisputed facts. The court decided that actually one of the six undisputed facts was disputed. And the court entertained the idea of setting aside the disputed fact and focusing on the undisputed facts, but in the end decided that it could not do that and it dismissed that appeal for want of jurisdiction because that one disputed fact formed the basis of their qualified immunity argument. In this case, there are numerous disputed facts that form the basis of their qualified immunity argument, most importantly of which is this assertion that each of the officers reasonably believed that he was faking it, which is in direct contrast to the district court's finding. And under Johnson v. Jones, they have to accept that finding in order for this court to have jurisdiction. Plaintiff's version of the facts is that Derrick Williams began to complain that he couldn't breathe immediately upon being taken into custody and handcuffed, and you can hear the complaint on the audio recording from Defendant Ticcioni's dispatch call. And when the inference is taken in plaintiff's favor, and you can hear his tone of voice, this is a man who is desperately complaining that he can't breathe. It's not somebody who is complaining that he's out of breath from running. We're entitled to that inference. And he's complaining that he can't breathe over and over again from the time that they handcuff him, through dragging him around the house. He falls face first onto the ground, dragging him all the way to the squad car to when they throw him in the squad car. And in addition to his repeated complaints that he can't breathe, during that time period he's exhibiting numerous signs of physical distress. His body repeatedly goes limp. He is unresponsive at times, and he's sweating profusely and breathing heavily. And after they throw him in the squad car, we see from the horrific video how he's acting in the backseat of that squad car, and that is clearly somebody who is in medical distress. And we're entitled to the inference that the way that he appears on that video, and the way that he's pleading and begging and crying out, and the way that he's obviously having trouble breathing, is the way that he appeared before he was thrown in the squad car. And plaintiff's evidence establishes, and this is what the district court found, that each of the officers had notice of his medical emergency, his need for medical help. And to Judge Ripple's point about the sergeants versus the patrol officers, the standard is the Williams versus Rodriguez factors. And the district court found, and our evidence shows, that each officer, both of the sergeants, and all of the patrol officers were on notice of Derrick Williams' serious medical condition, and they each failed to do anything about it. And the defendants were required to accept those facts for purposes of this appeal, and their unwillingness to do so deprives this court of jurisdiction. They've pleaded themselves out of court, essentially. If the court were to find jurisdiction and reach the merits of this appeal, it should affirm the district court's denial of qualified immunity. And I'd like to address the clearly established prong, because that's where they focus their argument, and I think they've all but conceded the constitutional violation prong by not really substantively addressing the Williams versus Rodriguez factors in any real way. But as to the clearly established prong, it can be satisfied in at least two ways. The first way is by citing to a closely analogous case, demonstrating that the conduct is unlawful. Another way to establish the clearly established prong is by demonstrating that the violation is so obvious that a reasonable officer would know that what he's doing violates the Constitution. And that's the Hope versus Pelzer line of cases, United States versus Lanier. And that's the line of cases that recognizes that the clearly established prong can be satisfied, even in novel circumstances, and that general statements of the law in certain circumstances can satisfy the clearly established prong. Plaintiffs in this case have satisfied the clearly established prong in both ways. The district court used the second method, the obviousness method, and it found that when the facts and the inferences are taken in the plaintiff's favor, they establish that each of these officers were well aware, they knew that he was in medical distress, and they intentionally did nothing about it until it was too late. And the district court found that that is such an obvious and egregious violation that it's unnecessary to cite a closely analogous case. And that analysis is in line with Hope versus Pelzer, and it's also in line with three recent decisions from this court from 2017 that we cite in our brief, a state of Perry versus Wenzel, a state of Ryan Clark versus Walker, and Orlowski versus Milwaukee County. All three of those cases involved government officials who deliberately ignored the serious medical needs of an individual in their custody. The Perry case was a Fourth Amendment case. The other two cases were Eighth Amendment cases. In all three of those cases, this court found that it was unnecessary to cite a closely analogous case to satisfy the clearly established prong because the conduct of the defendants was so obviously a violation of the plaintiff's constitutional rights because in those cases, as in this case, when the plaintiff's facts were credited, those defendants knew that the individual was suffering a medical emergency and did nothing about it. So the district court's analysis is in line with Hope. It's in line with those three cases, and it's correct. And we've satisfied the prong under the obviousness method. We've also satisfied the prong under the closely analogous case method, and that's through, again, the Estate of Perry case. Like I said before, the Estate of Perry case was a Fourth Amendment claim. It involved Milwaukee police officers who deliberately ignored the cries for help and the complaints that he couldn't breathe of this man, James Perry, and his physical signs of distress until he died in their custody. And this court found that in 2010, which was the date of the Perry case, that the right was clearly established, the right under the Fourth Amendment under the Williams v. Rodriguez factors was clearly established in 2010. Well, the police in Perry had a little different background, did they not, about Mr. Perry's condition and Mr. Elson's? The facts of Perry are different, as are the facts of every case. Well, facts are always different. Facts are always different. Qualified immunity is a great challenge because of that. I'm sure you're aware. But in Perry, they had instructions from the hospital and a little different background as far as knowledge of the officers with the individual, Mr. Perry. It's a little different. There are similarities and differences. I would argue that this case is more extreme than Perry because of the fact that Perry received medical treatment. The officers in Perry were under the impression that because Perry had received medical treatment, that he was cleared to be transported to the jail. In this case, they're confronted with a person who is in clear medical distress, as the district court found, and they did nothing about it. I think that the Perry case would qualify as a closely analogous case in that sense of establishing that prong of qualified immunity. But when you put the two together, you have the obviousness from Hope v. Pelzer and you have the closely analogous case of a state of Perry, I think there's no question but that these officers were on notice under these circumstances at this time that deliberately ignoring someone in their custody who's suffering a medical emergency violates the Constitution. Would you say it's the delay in this case? I mean, or is it because the video shows a substantial period of time? Is that the focus of it? I mean, if they looked at him and initially he made some claim and then stopped, we would have a different case? I don't think it's the delay. I think, as Judge Gettleman pointed out, by the time Officer Blykewell decided to check Mr. Williams' vital signs, Mr. Williams was already dead. And Officer Blykewell, even at that point, he checked Mr. Williams' vital signs. He didn't feel a pulse. He still doesn't call for paramedics. He moves at a snail's pace. He walks up to the car in front of his car and knocks on the window, looking for a sergeant. And then he comes back to the squad car and he checks Mr. Williams again. He still doesn't call for paramedics. He yells for some other officer to come over. Finally, that officer, who's not a defendant in this case, Boyack, calls for paramedics. So I think this isn't a delay in medical care case. I think it's a complete refusal and deliberate failure to provide any medical care throughout these circumstances leading up to his death. Well, the medical care eventually arrives. It's just too late. That's what I'm asking. Is this a delay case? It's a failure to procure prompt medical care for him. The paramedics ultimately arrive. By the time they arrive, he's already dead. I would like to address the defendant's argument that the district court failed to conduct an individualized analysis of each defendant, and Judge Gettleman touched on this. This is a 58-page, very detailed opinion. He sets out the facts extensively at the beginning of the opinion, and he does address each of these officers individually. Most importantly, he finds that the plaintiff's evidence shows that each of these handcuffed or right after he was handcuffed. So he puts them there at the key period of time where Mr. Williams is desperately complaining that he can't breathe and is exhibiting these physical signs of distress. And that puts each of these officers on notice of his serious medical need. So it is individual. The stress is evident way before he's in the car. Yes. We're entitled to that inference and that finding. We're entitled to it based on all the evidence, but we're also entitled to it, more importantly, because that's what the district court found. The district court found that they knew, that they were well aware that he was suffering. He found that there was a jury question as to whether there was. He found that there was a jury question as to that. He found that if plaintiff's evidence is credited, that's what it establishes. And they're stuck with that finding, but their refusal to accept that for purposes of their appeal deprives this court of jurisdiction. But going back to the individualized analysis argument, to the extent that this court were to find that somehow the district court's opinion wasn't individualized enough, Johnson v. Jones instructs that you can review the record to determine what facts the district court assumed in making its conclusion. And we put this in our summary judgment brief below, and it's clearly in this brief at pages 15 to 21. We have a whole section broken down by each officer as to how each one of them was on notice of Mr. Williams' serious medical need, and that's what the district court relied upon in reaching that determination. So we would ask that this court dismiss this appeal for want of jurisdiction. If you reach the merits, we would ask that you affirm the district court's denial of qualified immunity. Thank you. Thank you, Mr. Allison. How much time? Five. Five? No. Ms. Lappin. While the district court determined that there was a jury question as to what the officers were thinking, it made the determination when there is no evidence in the record, no affirmative evidence, which even suggests that any of these officers knew that Mr. Williams was dying and intentionally made a decision not to call an ambulance for the man. That particular aspect, meaning the intent of the officers is not something that applies when it comes to an objective reasonable test. The objective reasonableness test goes to the information that was present at the scene, the knowledge that the officers had that was undisputed. In this case, in that many, many pages of Judge Stottmuller's decision, he does go on and talk about the things that were made available to the officers that they were aware of. The statements made by Mr. Williams, not only that he couldn't breathe, but also that he was just playing with those people. They were his friends. The fact that he didn't have any type of gun. He was making other statements. His flight from the officers, hiding behind the table, covering his face early in the evening with the attempted robbery situation, hiding his identity, his refusal to give his name. He was able to talk. You say in your reply brief that the district court didn't even address those issues. That's not correct, is it? The district court did not apply those facts to each of the individual officers in their circumstance. I mean, it's clear that there were, there was a lot that happened in this 15 minutes, but not every officer or sergeant was present for everything during that 15 minutes. You're not answering my question. You say in your reply brief that the district court did not consider the fact that he had the mask on. I'm reading from the district court's opinion where he does just that. The judge talked about that in his initial review of the facts that represented. And that he had run the 200 to 300 yards. The district court definitely took that into consideration. You say he didn't, but he did. He did not in the sense that he did not have a separate discussion to talk about what each of the officers knew. He went through each of these officers, where they were, what they might've heard. He didn't make any findings. He just said that there's contested evidence about this. There were witnesses who said that they heard Mr. Williams shouting from the moment he was taken into custody. But it's not clear where those witnesses were, if they were right next door or nearby. That's what jury trials are all about, isn't it? But it's uncontested that Ticcioni and Cole were the officers who took Mr. Williams into custody. At about the time they were handcuffing him and taking him into custody, there were many officers that responded to the scene. We have Officer Tim, Officer Latier, Officer Cuspa. We have Officer Toms, who were there, got to the yard, had heard the call, knew about the attempted robbery and the flight, get there and sees that this gentleman is being taken into custody by other officers. Some say they didn't hear, I can't breathe. But even if they heard, I can't breathe, those officers who only responded briefly to that yard were well within reasonableness, an object of reasonableness in concluding that the officers who were touching Mr. Williams and attending to him were taking into consideration the information that Mr. Williams was stating, along with our observations of Mr. Williams in evaluating whether or not he needed medical care. There is no case law that would indicate that those officers who were only briefly at the yard and then left to go back and find evidence that they were unreasonable, objectively, by not calling for an ambulance in those circumstances. Those officers were entitled to qualified immunity. Regarding Officers Cole and Officers Ticcioni, they took Mr. Williams into custody with little resistance. They stood him up, they walked him out to the squad car. And yes, they heard those statements, but they were fully aware of the flight, of the distance that was run, of the evening, the heat of the evening. And so in their estimation, this individual was not experiencing an emergency medical situation such that they were required to immediately call him, call for him medical care. Again, there was no evaluation. There was no type of medical screening. The guy was just taken into the officer's custody. And then the last officers that had contact with Mr. Williams were Officer Klein and Officer Blakewell, who were the two officers that were in the squad car. And Officer Klein, as we discussed, and as the judge noted, he was the guy who chased after Mr. Williams. He was the officer who himself was breathing heavy and sweating and hot. So to hear somebody, I say, I can't breathe after they refuse to give their name, but they're making other statements. They're yelling, they're moving around. It was not objectively unreasonable for that officer to not conclude that it was constitutionally unsound for him not to call an ambulance at that point in time. And yes, you know, it's difficult watching that videotape, but again, that's Monday morning quarterbacking. The officers didn't see that videotape and that came at the end of these events. That videotape doesn't show us the entire sequence of events, the training of these officers, their backgrounds. And also we have to take into consideration the fact that their totality of circumstances needs to be evaluated from their perspective. And I think that... Would you speak to Mr. Elson's point about jurisdiction? About jurisdiction? I believe that the undisputed facts in this case, when analyzed from the perspective of the individual officers, from their circumstance, support giving them qualified immunity. Because the knowledge that they had about what was going on is not addressed in any case law. This is a very unique situation. There is no case that indicates that in their situation, knowing what they knew at the time, that it was constitutionally unsound for them to not immediately call for an ambulance. And the issue that seems to be a question of fact that the judge, the lower court judge, talks about is the issue of the intent of the officers. And again, from an objective reasonable standard, I don't believe that the intent is a significant fact. It's what another officer in the same situation, knowing what they knew about the flight, about the hiding, et cetera, et cetera, have been objectively unreasonable in not concluding that this was a medical emergency. Which required calling an ambulance. And my argument is in the everyday practice of police officers out there in the field, when you've got somebody in your custody for 15 minutes, he's not been medically screened. He's not been cleared medically. He's not even been interviewed yet. They are police officers. They are not doctors who can diagnose medical conditions that given their training, given their experience, it was not objectively unreasonable for them to have a conduct or engage in the conduct that they did on that evening. And I don't think that any case law suggests otherwise. And so we ask that the decision of the district court be vacated and the officers be awarded qualified immunity. Thank you. All right. Thank you. Thanks to all counsel. The case is taken under advisement.